IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THEODORE BUSH, and
PAMELA BUSH,                          :          CIVIL ACTION NO. **3:CV-11-0670**
                                      :
            Plaintiffs                :          Magistrate Judge Blewitt
                                      :
            v.                        :
                                      :
THE CITY OF SCRANTON, *et al.*,       :
                                      :
            Defendants                :

**<u>MEMORANDUM and ORDER</u>**

**I.      BACKGROUND**.

        On April 11, 2011, Plaintiffs, Theodore Bush and his wife, Pamela Bush, filed this civil rights

action, pursuant to 42 U.S.C. §1983, alleging a violation of their rights under the Fifth and

Fourteenth Amendments to the Constitution of the United States. (Doc. 1).  Plaintiffs named as

Defendants the following:  the City of Scranton ("City"); Michael Mitchell, Deputy Director of

Safety and Conservation for the City; Mark Seitzinger, Director of the Department of Licensing,

Inspections, and Permits for the City; and Carl Graziano, building Inspector for the City. Plaintiffs

named Mitchell, Seitzinger and Graziano as Defendants in their individual capacities.

        In their Complaint, Plaintiffs alleged that they owned a house and garage located at 311-313

Ferdinand Street, Scranton, Pennsylvania.  On July 21, 2009, Plaintiffs' Ferdinand Street house was

severely damaged by a fire.  On this same day, Defendant Mitchell sent a letter to Plaintiffs'

Ferdinand Street house giving Plaintiffs notice that their house was scheduled for immediate

demolition since it was a public health and safety hazard.  Plaintiffs averred that they did not

receive Defendant Mitchell's letter and did not receive proper notice of the demolition of their Ferdinand Street house.   Plaintiffs averred that on July 22, 2009, a neighbor told Plaintiff Pamela Bush that the City was commencing the demolition of her Ferdinand Street house, and that Pamela went to the house about 8:30 a.m. and offered to have a competent demolition contractors raze the house.   Plaintiffs alleged that Defendants refused this offer.

Plaintiffs then claimed that on July 22, 2009, Defendant City demolished their Ferdinand Street house and that Defendant Seitzinger also ordered that Plaintiffs' garage be razed.  Plaintiffs averred that their garage was razed by Defendants without providing them notice or opportunity to challenge the decision and file an appeal if necessary.   Subsequently, Plaintiffs alleged that they asked the City Solicitor why their garage was demolished since it was not damaged and did not pose a safety risk to the public, and that the Solicitor told them that the City Engineer believed that their garage had to be demolished since it would be unreasonable to repair the structure.

Thus, Plaintiffs claimed that on July 22, 2009, Defendant City took their property located at 311-313 Ferdinand Street, Scranton, Pennsylvania, without providing them with just compensation in violation of the   Fifth and Fourteenth Amendments to the United States Constitution.  Plaintiffs claimed that Defendants Mitchell, Seitzinger and Graziano deprived them of their property in violation of their procedural due process rights under the Fourteenth Amendment.   Further, Plaintiffs claimed that Defendants Mitchell, Seitzinger and Graziano conspired to deprive them of their constitutional rights by unlawfully demolishing their undamaged garage.  As relief, Plaintiffs sought compensatory damages against all Defendants as well as punitive damages against Defendants Mitchell, Seitzinger and Graziano.

After Defendants were served with the Summons and Plaintiffs' Complaint, they jointly filed a Motion to Dismiss on May 20, 20011, pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 4). Defendants' motion was briefed, and on October 26, 2011, the District Court issued a Memorandum and Order and denied Defendants' motion in all respects. (Doc. 10).

On November 14, 2011, Defendants City of Scranton, Mitchell, Seitzinger and Graziano filed their Answer to Plaintiffs' Complaint and asserted Affirmative Defenses to Plaintiffs' claims. (Doc. 11).

The parties then consented to the jurisdiction of a magistrate judge for all matters, pursuant to 28 U.S.C. § 636(c). (Doc. 15).

This Court has jurisdiction over this §1983 civil rights action pursuant to 28 U.S.C. § 1331 and §1343(a).[1]

The Court then allotted the parties ample time for discovery. (Docs. 18, 22 & 27). On June 17, 2013, Defendants timely filed a Motion for Summary Judgment along with their Brief in Support and their Statement of Undisputed Material Facts ("SMF"). (Docs. 30, 31 & 32). Defendants also submitted several exhibits (Doc. 32-1, pp. 1-100; Doc. 32-2, pp. 1-12; & Doc. 32-3, pp. 1-76) with their SMF. On July 22, 2013, Plaintiffs filed their Brief in Opposition to Defendants' Motion for Summary Judgment. (Doc. 35). Plaintiffs also filed their Counter Statement of Undisputed Material Facts ("CSMF") and several Exhibits. (Docs. 37-45). On August 6, 2013, Defendants filed

---

[1] Plaintiffs' instant action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).

their Reply Brief with an attached Exhibit, namely, the Opinion of the Court in the recent case of *Keller v. City of Scranton*, Civil No. 09-2534, M.D. Pa. (April 17, 2013, Judge Mariani), in which the Court granted individual City Defendants Mitchell and Seitzinger qualified immunity and, dismissed Plaintiff's punitive damages claim against the individual City Defendants.

The Court heard oral argument in the instant case on August 27, 2013. (Docs. 48 & 49). After hearing oral argument from counsel for Plaintiffs and for Defendants regarding Defendants' pending Motion or Summary Judgment **(Doc. 30)**, and after both counsel advised the Court that they stipulated to the dismissal of Defendant Carl Graziano from this case, the Court issued an Order on August 28, 2013, and directed that Defendant Carl Graziano, sued only in his individual capacity, is **DISMISSED WITH PREJUDICE** from this case.[2] (Doc. 50).

Currently pending before this Court is Summary Judgment Motion and the remaining Defendants **(Doc. 30)** with respect to the Plaintiff's claims, under § 1983, for violations of his substantive and procedural due process rights under the Fourth and the Fourteenth Amendments. The Summary Judgment Motions of both parties have been briefed and are ripe for disposition. (Docs. 28 and 34).

## II.    STANDARDS OF REVIEW.

### A.  Section 1983

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

---

[2]The parties agreed that there was no evidence Defendant Graziano was personally involved with the alleged violation of Plaintiffs' constitutional rights. Personal involvement is a requirement to hold a Defendant liable in a §1983 civil rights action. *See Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).

4

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Fisher v. Matthews,* 792F.Supp.2d 745, 2011 WL 1982920, *23 (M.D. Pa. 2011). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[3] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge

---

[3]Plaintiff alleges in his pleading that Defendants were employees of DOC and as such they are state actors.

and acquiescence, however, must be made with appropriate
particularity. (Citations omitted).

*See also Fisher v. Matthews*, 792F.Supp.2d 745, 2011 WL 1982920, *23*(citing Rode, supra)*.

### B. Summary Judgment Standard

A motion for summary judgment may not be granted unless the moving party is entitled to
judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment
if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show
that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is
"'genuine' only if a reasonable jury, considering the evidence presented, could find for the
nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988)(citing *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the
movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.*
725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.
The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions,
answers to interrogatories and admissions on file" designate "specific facts showing that there is a
genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence
in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862
F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true
and resolve any conflicts in his favor.  *Id*.(quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985),
*cert. denied,* 474 U.S. 1010 (1985)); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.

1976), *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

Thus, "summary judgment is proper, when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. General Motors*, 2009 WL 237247, *2 (3d Cir. 2009)(citation omitted); *Page v. Trustees of Univ. of Pennsylvania*, 222 Fed. Appx. 144 at 145 (3d Cir. 2007)(the court must "view the facts in the light most favorable to the party opposing the [summary judgment] motion when making [its] determination."); *Burlington v. News Corp.*, 759 F.Supp. 2d at 589-90. "Material facts" are those which might affect the outcome of the suit. *Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004).

## III.   MATERIAL FACTS.

Defendants and Plaintiffs have both filed Statements of Material Facts. (Doc. 32, ¶'s 1-19 and Doc. 36, ¶'s 1-26). Both parties submitted Exhibits with their SMF. Plaintiffs' and Defendants'

SMF complied with Local Rule 56.1, M.D. PA., since all of their numbered paragraphs referenced the evidence in the record to support their facts. Therefore, we shall accept each party's SMF that are supported by the record and that are not disputed by the other party, and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[4]

Plaintiffs owned a house and garage located at 311-313 Ferdinand Street, Scranton, Pennsylvania. Plaintiffs' 4-car garage located at 313 Ferdinand Street was a separate detached property from their house located at 311 Ferdinand Street and, their garage was about 5 feet away from their house.[5] Plaintiff Theodore Bush testified that the garage had one door but that it was wide enough to fit 4 cars, *i.e.*, 30 feet wide and 50 feet long. (Doc. 39, p. 11). On July 21, 2009, Plaintiffs' 311 Ferdinand Street house was severely damaged by a fire. Prior to the fire, Plaintiffs' house located at 311 Ferdinand Street was condemned by Defendant City on November 8, 2007, since it was in a state of disrepair and was a safety threat to the public. Plaintiffs' garage located

---

[4]*See also Paranich* District Court case at 286 F. Supp. 2d at 447 n. 3.

[5]While Defendants refer to Plaintiffs' house and garage located at 311-313 Ferdinand Street, Scranton, Pennsylvania, as the "Property" (Doc. 32, p. 1), the Court finds that such an attempt to join both structures together in this case is not appropriate. As stated above, it is undisputed that Plaintiffs' 4-car garage located at 313 Ferdinand Street was a separate detached property from their house located at 311 Ferdinand Street. It is also undisputed that Plaintiffs' garage had a completely different legal address than their house and that Plaintiffs paid separate taxes for the garage. (Doc. 38, p. 8). In fact, as discussed below, the Court finds that Defendants Seitzinger and Mitchell are entitled to qualified immunity with respect to the demolition of Plaintiffs' house located at 311 Ferdinand Street, but that disputed facts exist to preclude qualified immunity to Defendants regarding the demolition of Plaintiffs' separate garage located at 313 Ferdinand Street.

at 313 Ferdinand Street was not condemned at any time prior to the fire. Since the time Plaintiffs' 311 Ferdinand Street house was condemned, they did not live at this house and did not receive mail at this address. Plaintiffs testified at their depositions that the fire at their Ferdinand Street house did not cause any damage to their Ferdinand Street garage. (Doc. 36, ¶ 8). Defendant Seitzinger testified that the only damage he could see from the photos of Plaintiffs' garage after the fire was to the top right corner of the garage, right above the doorway on the roof area. Defendant Seitzinger testified that he did not see any other damage to Plaintiffs' garage from the photos shown to him. (Doc. 40, p. 9).

Immediately after the fire and on the same date, Defendant City's Engineer, Brian Swanson, inspected Plaintiffs' 311 Ferdinand Street house at the request of Defendant Seitzinger and found that Plaintiffs' 311 Ferdinand Street house was dilapidated and unfit for human habitation or occupancy. Swanson also found that it would not be reasonable to repair Plaintiffs' "structures" and that 'they" should be razed. (Doc. 32, Ex. E). While Swanson's Memo to Defendant Seitzinger only indicates that he inspected the Plaintiffs' 311 Ferdinand Street premise and does not specifically mention Plaintiffs' 313 Ferdinand Street garage, Swanson also states that the "structures" were not repairable and that "they" should be razed. (*Id.*). However, insofar as Swanson opines that the property was unfit for human habitation or occupancy, it is questionable if he was also referring to Plaintiffs' garage since a garage is not ordinarily designed for human habitation or occupancy. In any event, the Court finds that Swanson's Memo is not clear and that the stated matters are issues for fact for the jury to decide.

Following the fire, the police for Defendant City conducted a criminal investigation to determine if arson was involved. (Doc. 32, Ex. D). As part of the investigation, on July 23, 2009, Plaintiff Pamela Bush signed a Consent to Search and Seize for only Plaintiffs' 311 Ferdinand Street premise. Plaintiff Pamela Bush gave authorities her permission to enter the 311 Ferdinand Street premise to conduct their investigation and to seize evidence. The Consent to Search and Seize did not mention Plaintiffs' 313 Ferdinand Street garage. (Doc. 32, Ex. F). Plaintiff Pamela Bush testified that she only gave authorities her permission to enter the 311 Ferdinand Street house and that the Consent to Search and Seize did not encompass her garage. Plaintiff Pamela Bush stated that she would not have given authorities such permission with respect to her garage since it was a completely different address and she pays separate taxes for the garage. (Doc. 38, p. 8).

On July 21, 2009, Defendant Mitchell mailed to Plaintiffs' 311 Ferdinand Street house a letter notifying Plaintiffs that their 311 Ferdinand Street property was scheduled for demolition due to its dilapidated condition and danger to public safety. (Doc. 32, Ex. H, pp. 39-40 of Defendant Seitzinger's Deposition and Ex. C attached thereto & Doc. 43). As mentioned, Plaintiffs did not receive their mail at their 311 Ferdinand Street property. (Doc. 38). Also, there is no indication in the July 21, 2009 letter that it was sent to Plaintiffs either by registered mail or certified mail. Defendant Mitchell's July 21, 2009 letter did not mention Plaintiffs' 313 Ferdinand Street garage. Rather the letter stated "Re: Demolition of Structure" "311 Ferdinand Street" and that "the above-mentioned property is scheduled for demolition." The letter also stated that "the above-mentioned property had a fire that has made the structure unsafe and need to be demolished." (Doc. 43). As indicated above, there was no fire at the Plaintiffs' 313 Ferdinand Street garage. It is also disputed

as to whether there was any damage from the fire to Plaintiffs' 313 Ferdinand Street garage. (Doc. 39, pp. 17 & 26 and Doc. 32, Ex. C, pp. 55-57).

Also, on July 21, 2009, Plaintiffs' 311 Ferdinand Street house was posted with a Condemnation Sign giving notice that Plaintiffs' house was condemned. (Doc. 32, Ex. H, p. 42 of Defendant Seitzinger's Deposition and Ex. G-1 photo attached thereto). Plaintiffs' garage was not posted with any notice.

In a letter dated July 23, 2009 from Defendant Seitzinger to the Defendant City Law Department, Seitzinger stated that a fire occurred on "July 22, 2009" at a property located at 311 Ferdinand Street and that this property was heavily damaged by fire. (Doc. 32, Ex. H, Defendant Seitzinger's Deposition and Ex. C attached thereto & Doc. 44). Defendant Seitzinger also stated that an adjacent house located at 309 Ferdinand Street was damaged by the fire but was still structurally sound. Defendant Seitzinger concluded that due to the fire, "the 311 Ferdinand Street [property] was so badly damaged and is so unsafe, that it is imperative that the property be razed immediately to ensure the safety of the citizens of the City of Scranton." Not once in Defendant Seitzinger's letter did he mention Plaintiffs' 313 Ferdinand Street garage. Nor did Defendant Seitzinger implicate in any manner that there was any damage to Plaintiffs' 313 Ferdinand Street garage from the fire and that the garage was unsafe and threat to the public.

The Defendant City determined that it was going to demolish Plaintiffs' 311 Ferdinand Street house. Plaintiffs did not receive the July 21, 2009 letter from Defendant Mitchell before Defendant City demolished their 311 Ferdinand Street house. (Doc. 32, Ex. C, pp. 60-64). Plaintiff Pamela Bush was notified by a neighbor on July 23, 2009, that Defendant City was going to demolish their

311 Ferdinand Street property and she went to the site and spoke to representatives of Defendant City. (*Id.*). Plaintiff Pamela Bush stated that Defendants Seitzinger and Mitchell were present at the site along with former Defendant Graziano. Plaintiff Pamela Bush signed the Consent to Search and Seize form for only the 311 Ferdinand Street house and she was at the site when the house was demolished. Defendant City representatives then asked Plaintiff Pamela Bush if they could demolish the garage located at 313 Ferdinand Street and she said "absolutely not." Defendant City representatives then insisted that Plaintiff Pamela Bush remove the 2 cars in the garage and she called her husband and, they had their cars towed out of the garage. Plaintiff Pamela Bush told Defendant City representatives that she did not give them permission to touch her garage. Plaintiffs' garage was then also demolished. (*Id.,* pp. 65-72). Plaintiff Pamela Bush testified that after the fire and before the demolition, she did not have the garage inspected by an engineer or a contractor for structural damage. (*Id.,* pp. 84-85).

Prior to the demolition, Plaintiffs asked Defendant Mitchell if they could demolish their house privately, and Mitchell advised Plaintiffs that they could not demolish their 311 Ferdinand Street house privately since it was still a crime scene. (Doc. 32, Ex. I, pp. 21-22).

Defendant City used the BOCA National Property Maintenance Code with respect to the Unsafe Structures, Section PM-108.1, Closing of Vacant Structures, PM-108.2, Demolition of Properties, PM-110.1 and Notices, PM-107.0., *et seq.* (Doc. 45, Doc. 32, Ex. I, pp. 26-28, Doc. 40, pp. 9-10).

The only Notice which was provided to Plaintiffs regarding the demolition of their 311 Ferdinand Street house was the July 21, 2009 letter addressed to Plaintiffs by Defendant Mitchell

at their 311 Ferdinand Street house. (Doc. 43, Doc. 32, Ex. I, pp. 26-28, Doc. 40, pp. 9-10). Defendant Mitchell admitted that he did not personally serve Plaintiffs his July 21, 2009 letter. Defendant Mitchell testified that he sent his July 21, 2009 letter to Plaintiffs by regular mail as well as by certified mail. Defendant Mitchell also posted the letter at Plaintiffs' 311 Ferdinand Street house. (Doc. 32, Ex. I, pp. 26-29). As stated above, Plaintiffs did not use their 311 Ferdinand Street house as their legal address to receive their mail during the relevant times of this case. Also, as discussed, Plaintiffs did not receive Defendant Mitchell's July 21, 2009 letter before the demolition of their 311 Ferdinand Street house began. Further, despite the testimony of Defendant Mitchell that it was always his custom, practice and procedure to mail his letters regarding the demolition of structures to the owners by regular mail and by certified mail, and to post the letter at the property to be demolished, his July 21, 2009 letter to Plaintiffs did not indicate that it was sent by certified mail and Mitchell did not have a return receipt U.S. Post Office green card in his file indicating that Plaintiffs signed for the letter and received it. (Doc. 32, Ex. I, pp. 29-32). At bottom, the Court finds that it is a disputed material fact as to how Defendant Mitchell sent Plaintiffs his July 21, 2009 letter, and that it is a fact question for the jury to decide as to whether Plaintiffs received proper notice from Defendants regarding the demolition of their 311 Ferdinand Street house and their 313 Ferdinand Street garage. As discussed above, Defendant Mitchell's July 21, 2009 letter to Plaintiffs only referred to the demolition of Plaintiffs' 311 Ferdinand Street property and it did not mention Plaintiffs' 313 Ferdinand Street garage. Further, Defendant Seitzinger's July 23, 2009 letter to the Defendant City Law Department only referred to the demolition of Plaintiffs' 311 Ferdinand Street property and it did not mention Plaintiffs' 313

Ferdinand Street garage. (Doc. 44). The Court also finds that the jury must decide if Defendants complied with the form of Notice for the demolition of a structure required by BOCA.

Additionally, the Court finds that there is no dispute with respect to the severe damage to Plaintiffs' house located at 311 Ferdinand Street and with respect to the need to demolish their house. However, the Court finds that disputed facts exist as to whether Plaintiffs' separate 4-car garage located at 313 Ferdinand Street was damaged, as to the extent of the damages, if any, to the garage and as to whether it was necessary to demolish Plaintiffs' garage. Also, as stated, the Court finds that the evidence is disputed as to whether Plaintiffs received proper notice with respect to the demolition of their house located at 311 Ferdinand Street, and that the evidence is disputed as to whether Plaintiffs received any notice regarding the demolition of their garage and had a chance to appeal the decision to demolish their garage. It is not even clear from Swanson's Memo as whether both Plaintiffs' house and garage were not repairable and should be razed or just Plaintiffs' house. As such, it is appropriate for the fact finder at trial to decide these issues.

## IV.  DISCUSSION.

### A. Constitutional Claim against Defendant City under Monell

Defendants move for summary judgment with respect to Plaintiffs' constitutional claim against Defendant City. Defendants rely, in part, on the May 24, 2010 decision in the *Keller v. City of Scranton*, Civil 09-2534, M.D. Pa., case in which the Court granted Defendant City's Motion to Dismiss Plaintiff 's Amended Complaint as against it for failing to state a constitutional claim against under *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants attached a copy of the May 24, 2010 decision in *Keller v. City of Scranton* to

its initial brief, Doc. 31, as Exhibit A.  Of course, the current posture of our case is different than in the *Keller v. City of Scranton* regarding the constitutional claim against Defendant City under *Monell*.  In fact, in our case, the Court previously denied Defendants' Motion to Dismiss Plaintiffs' Complaint as against Defendant City for failing to properly state a claim against under *Monell*. (Doc. 10, pp. 4-6).   Thus, since discovery is now complete in our case, Plaintiffs are required to identify through evidence a policy or custom executed by the Defendant City that deprived them of their constitutional rights.  As such, the Court does not find that the May 24, 2010 decision in the *Keller v. City of Scranton* is controlling in deciding whether our Plaintiffs have established a claim under *Monell* against Defendant City.

Defendants argue that Plaintiffs failed to produce any evidence which shows that the alleged unconstitutional conduct by Defendants Seitzinger and Mitchell was caused by a formal policy or procedure of Defendant City with respect to demolition of structures in the City.  Defendants state that "Plaintiffs are challenging the actions of the City of Scranton's employees in one case involving alleged improper 'notice' of the City's intention to demolish certain strictures after a fire on one property." (Doc. 46, p. 5).

Insofar as Plaintiffs names the City of Scranton as a Defendant, they must proceed under the theory of municipal liability pursuant to *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We agree with Defendants that Defendant City cannot be held liable for the conduct of persons it supervises, such as Defendants Mitchell and Seitzinger, pursuant to *respondeat superior. Brickell v. Clinton County Prison Bd.*, 658 F.Supp. 2d 621, 626-27 (M.D. Pa. 2009).  Rather, Defendant City  is subject to liability in a §1983 action to the extent it

maintained an unconstitutional custom or policy that caused the constitutional violations alleged by Plaintiffs. *Id.*(citation omitted). In order for Plaintiffs to successfully establish a constitutional claim under §1983 against Defendant City, they must raise a claim under *Monell* showing that Defendant City is a governmental entity and thus a "person" under §1983 and, showing that either a policy or lack of policy of Defendant City led to the unlawful demolition of their Ferdinand Street house and garage. *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978); *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).

Under *Monell*, "municipalities and other local government units are among those "persons" to whom Section 1983 applies." *Malles v. Lehigh County*, 639 F. Supp. 2d 566, 576 (E.D. Pa. 2009).

As the Court in *Malles v. Lehigh County*, 639 F. Supp. 2d at 576, stated:

> According to the teaching of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), Lehigh County "can be sued directly under §1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell*, 436 U.S. at 690.

In *Kokinda,* the Court stated:

> A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior*. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to "deliberate indifference . . .

16

> [to the constitutional rights of persons with whom the police come
> in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324
> (3d Cir. 2005) (citations omitted). There must also be a causal
> nexus, in that the "'identified deficiency in [the] training program
> must be closely related to the ultimate 'constitutional'' injury."
> *Id*. at 325 (citations omitted).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)(citation omitted); *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *8. Further, Plaintiff "must show causation." *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *8. "Liability exists only when 'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Id.*(citations omitted).

At the present stage of our case where discovery has been completed, Plaintiffs must show, *via* evidence, that a "policy or custom" of Defendant City was the "moving force" behind the constitutional violations regarding their properties on Ferdinand Street. Defendants contend that Plaintiffs have failed to show through evidence any specific policies of the City that authorized the actions Defendants Mitchell and Seitzinger with respect to their Ferdinand Street properties. Defendants argue that Defendants Mitchell and Seitzinger had no authority to make any policy for Defendant City and to execute any policy on behalf of Defendant City. Plaintiffs state that "the actions of the City of Scranton, promulgated through Seitzinger and Mitchell, based on the

17

testimony of Seitzinger and Mitchell, could trigger municipal liability and indeed raise the serious question that a genuine issue of material fact as to whether their actions were unconstitutional." (Doc. 35, pp. 6-7). Plaintiffs also argued during oral argument that the *Keller v. City of Scranton* case shows that the City had a policy of not giving property owners notice before demolishing their properties. However, at the summary judgment stage in the *Keller v. City of Scranton* case, on April 17, 2013, the Court found that Defendants sent proper notices that the subject property was condemned and scheduled for demolition but sent the notices to the owner of the property at the time the property was condemned and scheduled for demolition and not to the subsequent owner of the property who was the legal owner at the time the property was actually demolished.[6] In the present case, as discussed above, the Court finds that it is a fact question for the jury to decide as to whether our Plaintiffs received proper notice from Defendants regarding the demolition of their 311 Ferdinand Street house and their 313 Ferdinand Street garage. Thus, the Court does not agree with Plaintiffs that the *Keller v. City of Scranton* case shows that the City had a policy of not giving owners proper notice before demolishing their properties.

The Court agrees with Defendants and finds that Plaintiffs have failed to show through evidence any specific policies of the Defendant City that authorized the alleged unconstitutional actions of Defendants Mitchell and Seitzinger with respect to their Ferdinand Street properties. In fact, it is not disputed that Defendant Mitchell testified that the City Inspectors used the BOCA

---

[6]Defendants attached a copy of the Court's April 17, 2013 Opinion in the *Keller v. City of Scranton* case to its Reply Brief, Doc. 46-1. The Court notes also that Plaintiff in the *Keller v. City of Scranton* case appealed the District Court's April 17, 2013 decision to the Third Circuit Court of Appeals but his appeal was dismissed on June 11, 2013, by the Third Circuit Court for failure to timely prosecute. (Doc. 70, Civil No. 09-2534, M.D. Pa.).

Codes when they were condemning a property and, that it was always his custom and practice to use the Notice procedure outlined by BOCA Codes when the City was going to demolish a structure after it was condemned. (Doc. 32, Ex. I, pp. 26-32).

Therefore, the Court will grant Defendants' Summary Judgment Motion (Doc. 30) with respect to Defendant City of Scranton, and it will enter Judgment in favor of Defendant City and against Plaintiffs. *See Red Carpet Inn, LLC v. Kravtz*, 2010 WL 3293336 (M.D. Pa. Aug. 19, 2010); *Para v. City of Scranton*, Civil No. 06-2432, M.D. Pa.

The Court now turns to discuss whether the two remaining Defendants in this case, namely, Mitchell and Seitzinger are entitled to Qualified Immunity.

### B. Qualified Immunity of Defendants Mitchell and Seitzinger

Plaintiffs claim, in part, that Defendants violated their Fourteenth Amendment due process rights and that their "property right was denied by the Defendants' decision to demolish the garage at 313 Ferdinand Street without any notification by the Defendants." (Doc. 35, pp. 3-4).

To establish a Fourteenth Amendment procedural due process claim under §1983, the Plaintiff must show that the Defendants were acting under the color of law when they deprived the Plaintiff of a protected property interest and that the procedures for challenging the deprivation were inadequate. *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) overruled on other grounds by *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003); *see also Red Carpet Inn, LLC v. Kravtz*, 2010 WL 3293336 (M.D. Pa. Aug. 19, 2010).

As the Court stated in *El Malik v. City of Philadelphia*, 2007 WL 984455, *8 (E.D. Pa. 2007):

19

Procedural due process normally requires that a governmental deprivation of life, liberty or property be preceded by notice and opportunity for a hearing appropriate to the nature of the case. *Logan v. Zimmerman Brush Co*. 445 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). As there is no real question that the Plaintiff's ownership interest in real property merits the procedural protections of due process of law, *see James Daniel Good Real Property*, 510 U.S. at 49, the only remaining question is whether the Plaintiffs have come forward with sufficient evidence to show constitutionally inadequate notice.

"Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 1714, 164 L.Ed.2d 415 (2006). What is required is notice "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Jones,* 547 U.S. at ----, 126 S.Ct. at 1714 (holding that when the state sent notice of a tax sale but it was returned unclaimed, it had to take additional reasonable steps to attempt to provide notice to the property owner before selling the property, if it was practicable to do so).

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332,353-54 (2010), affirmed 439 Fed.Appx. 190 (3d Cir. 2011), the Court stated:

The Due Process Clause of the Fourteenth Amendment prohibits the states from depriving any person of property without "due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege:(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " *Hill v.*

*Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir.2006) ( *citing Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). In *Sample v. Diecks,* 885 F.2d 1099, 1113 (3d Cir.1989), the Third Circuit identified a plaintiff's need to allege and prove five things in relation to a § 1983 procedural due process claim:

(1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Id.* at 1113-14; *see also Zellner v. Monroe County Mun. Waste Management Authority,* No. 3:07-CV-1976, 2008 WL 2962595, at *5 (M.D.Pa. July 28, 2008) (Caputo, J.).

"The level of process due to a party prior to the deprivation of a property interest, under the Due Process Clause, is highly dependent on the context." *In re Mansaray-Ruffin,* 530 F.3d 230, 238 (3d Cir.2008). The United States Supreme Court noted the "cryptic and abstract words" of the Due Process Clause in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950). The Court held that prior to the deprivation of property, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, and afford them an opportunity to present their objections." *Id.* at 314. The Court has held that mail service "is reasonably calculated to provide actual notice," *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988), and commented that due process requires nothing more and certainly not [in a case] where [the] petitioner had a statutory duty to pay his taxes," *Jones v. Flowers,* 547 U.S. 220, 241-42 (2006).

In the present case, as discussed above, the Court finds that there are factual disputes among the parties as to whether Plaintiffs received proper notice that both of their Ferdinand Street properties (*i.e.*, Plaintiffs' 311 Ferdinand Street house and 313 Ferdinand Street garage) were going to demolished. As detailed above, the facts are disputed as to whether Plaintiffs received sufficient notice that their 311 Ferdinand Street house was going to be demolished, and whether Plaintiffs

received any notice that their 313 Ferdinand Street garage was going to be demolished. Also, while it is not disputed in the record that Plaintiffs' 311 Ferdinand Street house was badly damaged by the July 2009 fire and was an immediate threat to the safety of the public, it is disputed by the evidence whether Plaintiffs' 313 Ferdinand Street garage was damaged by the fire and was a threat to the safety of the public. Thus, the Court will allow Plaintiffs to proceed to trial with respect to their Fourteenth Amendment procedural due process claim with respect to both their 311 Ferdinand Street house and their 313 Ferdinand Street garage against Defendant Seitzinger and Mitchell unless these Defendants are entitled to Qualified Immunity.

In *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 684-85 (M.D. Pa. 2010), the Court stated:

> "Qualified immunity shields government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Manigault v. King,* 339 Fed.Appx. 229, 231 (3d Cir.2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Courts apply a two-step test to the defense of qualified immunity: "whether the Officers' acts violated a constitutional or statutory right, and if they did, whether that right was clearly established at the time of the violation." *Mierzwa v. United States,* 282 Fed.Appx. 973, 978 (3d Cir.2008). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

Additionally, in *Williams v. Smith*, 2012 WL 6634896, *3 (3d Cir. December 21, 2012), the Third Circuit recently stated:

> "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1981) (internal quotation marks omitted). In determining whether an official is entitled to qualified immunity, we must answer two questions: (1) whether the facts make out a violation of a constitutional right and (2) whether the right was clearly established at the time of the defendants' conduct. *See Pearson v.. Callahan,* 555 U.S. 223, 232 (2009).

In order for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

As discussed above, the facts are disputed as to whether the actions of Defendants Seitzinger and Mitchell violated Plaintiffs' Fourteenth Amendment procedural due process rights with respect to their 311 Ferdinand Street house and their 313 Ferdinand Street garage. Thus, Defendants' affirmative defense of qualified immunity depends on whether or not Plaintiffs can prove that Defendants violated a "clearly established constitutional or statutory rights of which a reasonable person would have known." *Wilson v. Sciillinger*, 761 F.2d 921, 929-30 (3d Cir. 1985). The right has to have contours clear enough that a reasonable official would understand that what he was doing at the relevant time was a violation of the right. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

In *Crawford v. Lappin*, 2011 WL 1983508, *9 (M.D. Pa. April 20, 2011), adopted by 2011 WL 1979871 (M.D. Pa. May 20, 2011) affirmed by 446 Fed.Appx. 413 (3d Cir. Oct. 3,2011), the Court stated:

> Government officials performing "discretionary functions" are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *see also Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172

L.Ed.2d 565 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." *Crouse  v. S. Lebanon Twp.*, 668 F.Supp.2d 664, 671 (M.D.Pa.2009) (Conner, J.) (citations omitted). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*,129 S.Ct. at 815.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), abrogated in part by *Pearson,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565; *Curley v. Klem,*  499 F.3d 199, 206 (3d Cir.2007); *Williams v. Bitner,*  455 F.3d 186, 190 (3d Cir.2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. *Saucier,*  533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. *Pearson*, 129 S.Ct. at 81516; *Saucier*, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. *Williams*, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202). In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." *Wilson,*  526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*,  536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *United*

> States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137
> L.Ed.2d 432 (1997) (internal quotation marks and citation
> omitted)). In some cases, "officials can still be on notice that
> their conduct violates established law even in novel factual
> circumstances." *Wilson,* 455 F.3d at 191 (quoting *Hope,* 536
> U.S. at 741).

The *Crawford* Court, 2011 WL 1983508, *10, also stated:

> The court is no longer required to conduct these two inquiries
> sequentially, *Pearson*, 129 S.Ct. at 820, and it may forego difficult
> constitutional issues and award qualified immunity to a defendant if
> it is apparent that the defendant did not violate rights that were
> clearly established at the time the defendant acted. *Id.* Where a
> court elects to address the alleged constitutional violations,
> however, the court's analysis of the merits for purposes of summary
> judgment merges with analysis of the deprivation of federal rights
> for purposes of qualified immunity. *Gruenke v. Seip ,* 225 F.3d 290,
> 299- 300 (3d Cir.2000); *Crouse,* 668 F.Supp.2d at 671; *see also
> Grant v. City of Pittsburgh,* 98 F.3d 116, 122 (3d Cir.1996)
> ("[C]rucial to the resolution of [the] assertion of qualified immunity
> is a careful examination of the record ... to establish ... a detailed
> factual description of the actions of each individual defendant
> (viewed in a light most favorable to the plaintiff).") Because
> qualified immunity entails a consideration of whether the law was
> clearly established at the time of a defendant's conduct, this
> defense, which focuses on the state of the law, presents a question
> of law for the court, and one which can often be resolved on
> summary judgment. *See Montanez v. Thompson,* 603 F.3d 243(3rd
> Cir. 2010).

The qualified immunity inquiry focuses, then, on whether Plaintiffs have demonstrated

that they have a constitutional right that was "clearly established" at the time that alleged right

was violated, and that a reasonable official in the Defendants' position would have understood

that their conduct at the relevant time was a violation of that constitutional right.

Defendants argue that the evidence shows Plaintiffs received notice of Defendant City's

intention to demolish both their house and garage on Ferdinand Street. Defendants state that

they are entitled to Qualified Immunity "because their discretionary actions in demolishing both [Plaintiffs'] house and garage were done under special circumstances in the context of protecting the safety and welfare of City residents after a devastating fire." (Doc. 46, p. 3). Defendants contend that their actions fall within the purview of the Qualified Immunity defense. Defendants rely heavily upon the *Keller v. City of Scranton* case, and the Court's April 17, 2013 decision finding that Defendants Seitzinger and Mitchell were entitled to Qualified Immunity regarding Plaintiff Keller's procedural due process claim against them for demolishing his property without giving him notice. (*See* Doc. 46-1). In *Keller*, the prior owner who owned the property at the time of the condemnation and the scheduling of the demolition was sent notice, but during the almost 2-year gap between that time and the time of the actual demolition, Plaintiff Keller had purchased the property at a tax sale. In *Keller,* Defendants Mitchell and Seitzinger failed to check publicly available records at the time of actual demolition to see if the owner of the property had changed, and they failed to send a second notice of demolition to the new owner.

The Court finds that the *Keller v. City of Scranton* case is factually different from the instant case. In our case, unlike the *Keller v. City of Scranton* case, there is a factual dispute as to whether Defendants Mitchell and Seitzinger properly sent the required notice to Plaintiffs regarding the demolition of Plaintiffs' 311 Ferdinand Street house and their Plaintiffs' 313 Ferdinand Street garage. As stated, the evidence is disputed if Defendant Mitchell's July 21, 2009 letter was sent to Plaintiffs by regular mail and certified mail, if Plaintiffs ever signed the return receipt for any certified mail letter prior to the commencement of the demolition and, if

Mitchell's letter only provided notice as to the demolition of Plaintiffs' 311 Ferdinand Street house.  In *Keller v. City of Scranton,* Defendants sent the required notice to the owner of the property at the time the property was condemned and scheduled for demolition.  In our case, Plaintiffs did not receive Defendant Mitchell's July 21, 2009 letter before the demolition of their 311 Ferdinand Street house began.  Also, as discussed in detail above, there is a factual dispute in our case if any proper notice was sent to Plaintiffs regarding the demolition of their 313 Ferdinand Street garage.  Thus, our case does not deal with facts similar to the facts in the *Keller v. City of Scranton* case were Defendants City officials simply failed to check if there was a change in ownership in the condemned property at the time of the actual demolition.  Therefore, the Court finds that the *Keller v. City of Scranton* case is not on point with our case.

Based on the above discussion, the Court also completely disagrees with Defendants that the record in our case shows Plaintiffs received notice of Defendant City's intent to demolish both their Ferdinand Street house and garage.  (Doc. 46, p. 3).  The Court has found this issue to be a disputed material fact.  Also, the Court has found that the evidence is disputed as to whether Plaintiffs' separate and free-standing garage was damaged by the July 2009 fire and whether it posed a safety threat to the public.  The Court does find, however, the evidence is undisputed that Plaintiffs' Ferdinand Street house was severally damaged by the fire and posed an immediate safety threat to the public.  Thus, the Court agrees with Defendants and finds that a reasonable official in the position of Seitzinger and Mitchell would have understood that their conduct regarding Plaintiffs' severally damaged Ferdinand Street house, at the relevant time as thoroughly detailed above, was not a violation of Plaintiffs' due process rights.  *See Elsmere Park*

27

*Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008)("Where there is 'the necessity of quick action by the State,' or where 'providing any meaningful pre[-]deprivation process' would be impractical, the Government is relieved of the usual obligation to provide a pre[-] deprivation hearing."(citation omitted).   As such, the Court finds that  Defendants Seitzinger and Mitchell are entitled to qualified immunity with respect to Plaintiffs' due process claim relating to their Ferdinand Street house.  The undisputed condition of Plaintiffs' house clearly required quick action by the City officials to demolish it. However, the Court finds that material issues of fact exist as to whether a reasonable official in the position of Defendants Seitzinger and Mitchell would have known that their conduct was a violation of Plaintiffs' Fourteenth Amendment procedural due process rights with respect to Plaintiffs' Ferdinand Street garage.  It is subject to dispute whether the condition of Plaintiffs' garage required quick action by the City officials to demolish it.  It is also disputed whether Plaintiffs' garage needed to be demolished at all. Accordingly, the Court finds that Defendants Seitzinger and Mitchell are not entitled to qualified immunity with respect to Plaintiffs' due process claim relating to their Ferdinand Street garage.

The Court must now consider Plaintiffs' Fifth Amendment taking claim and Plaintiffs' punitive damages claims against Defendants Seitzinger and Mitchell.

### C. Fifth Amendment Claim against Defendants Seitzinger and Mitchell

As stated, Plaintiffs claim that Defendants took their Ferdinand Street house and garage without providing them with just compensation in violation of the Fifth Amendment.  The Fifth Amendment Takings Clause "prohibits the government from taking private property for public

28

use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S.Ct. 2448 (2001); *Whittaker v. County of Lawrence*, 674 F.Supp.2d 668, 679 (W.D. Pa. 2009). The Takings Clause of the Fifth Amendment applies to the States through the Fourteenth Amendment. *See Palazzolo,* 533 U.S. at 617. There is no dispute in our case that the alleged takings by Defendants Seitzinger and Mitchell were effectuated by state actors.

In *Spence v. Thompson*, 2013 WL 1180765, *18 (W.D. Pa. January 04, 2013), adopted by 2013 WL 1180763 (W.D. Pa. Mar. 20, 2013), the Court stated:

> [T]he government may confiscate private property so long as two conditions are met: (1) the taking must be for a "public use," and (2) "just compensation" must be paid to the property owner. *Brown v. Legal Found. of Wash.,* 538 U.S. 216, 231–32 (2003) (footnote omitted). A taking typically occurs "when the government encroaches upon or occupies private land for its own proposed use." *Palazzolo,* 533 U.S. at 617. While the Takings Clause has been applied primarily to takings of real property, the courts have found compensable property under that clause to also include intangible rights, such as liens on property, *Armstrong v. United States,* 364 U.S. 40, 49 (1960), access to courts/right to redress, *Logan v. Zimmerman,* 455 U.S. 422, 428–433 (1982), contractual rights, *United States Trust Co. of New York, v. New Jersey,* 431 U.S. 1, 19 n. 16 (1977), and fundamental property rights such as public employment and rights deriving therefrom (*Board of Regents of State Coll. v. Roth,* 408 U.S. 564, 576–77 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602–03 (1972)). *See Vulcan Pioneers, Inc. v. New Jersey Dep't of Civil Serv.,* 588 F.Supp. 716, 725–26 (D.N.J.1984), *vacated on other grounds,* 588 F.Supp. 732 (D.N.J.1984).

(Footnote omitted).

Defendants argue that they are entitled to summary judgment with respect to Plaintiffs' Fifth Amendment Takings Clause claim since no taking of Plaintiffs' Ferdinand Street land occurred. (Doc. 31, pp. 8-9). Defendants point out that Plaintiffs still own their Ferdinand Street

land where both their house and garage stood, and since Plaintiffs still have an ownership interest in their property, their claim under the Fifth Amendment Takings Clause fails. Defendants rely upon *Andrus v. Allard*, 444 U.S. 51, 100 S.Ct. 318 (1979) and *Munoz v. City of Union City*, 481 Fed.Appx. 754 (3d Cir. 2012).

There is no dispute that Plaintiffs still own their Ferdinand Street land where both their house and garage stood. However, Plaintiffs argue that their undamaged garage was in fact taken from them when it was demolished and that they no longer have a "possessory interest" in their garage and, that this constitutes a violation of the Fifth Amendment. (Doc. 35, p. 7). During oral argument, Plaintiffs also stated that Defendants would not give them a permit to re-build on their Ferdinand Street land and counsel for Defendants did not dispute this contention. Plaintiffs maintain that genuine issues of material fact exists as to whether the demolition of their garage constituted a taking sufficient to establish their Fifth amendment claim against Defendants. (*Id.*, p. 8).

The Court agrees with Defendants that Plaintiffs have failed to establish their Fifth Amendment Takings Clause claim based on *Munoz v. City of Union City*, *supra*. In *Munoz v. City of Union City*, 481 Fed.Appx. at 759, the Third Circuit stated that "[a] Takings Clause claim cannot lie where the Plaintiff was not deprived of all beneficial uses of his property."(citing *Andrus v. Allard*, 444 U.S. 51, 65-66, 100 S.Ct. 318 (1979)). The Third Circuit in *Munoz v. City of Union City* then stated that since Plaintiff conceded he retained a possessory interest in his property and was still entitled to put his property to any number of beneficial uses, "[Plaintiff's] continuing possessory interest in the property [even if Defendant was authority to order the

demolition] prevents him from establishing a Takings Clause violation." *Id*.

Based on *Munoz v. City of Union City*, the Court agrees with Defendants that they are entitled to summary judgment with respect to Plaintiffs' Fifth Amendment Takings Clause claim.

### D. Punitive Damages Claim against Defendants Seitzinger and Mitchell

Plaintiffs seeks punitive damages claims against Defendants Seitzinger and Mitchell in their individual capacities.[7] The Court previously denied Defendants' Motion to Dismiss to the extent it was directed at Defendants Graziano, Seitzinger and Mitchell in their individual capacities. (Doc. 10, p. 8). As stated above, Defendant Graziano has subsequently been dismissed from this case. Defendants Seitzinger and Mitchell now move for summary judgment with respect to Plaintiffs' punitive damages claim against them. Plaintiffs argue that they have made proper a claim for punitive damages against Defendants Seitzinger and Mitchell, in their individual capacities, since Defendants did not follow their own code, and since the record

---

[7]The Court held that Plaintiffs could only properly seek punitive damages against the individual Defendants in their personal capacities. The Court found that Plaintiffs were precluded from recovering punitive damages against the Defendant local government, *i.e.*, City of Scranton, and against the individual Defendants in their official capacities. Plaintiffs stated that they only sought punitive damages against the individual Defendants in their personal capacities.

The Supreme Court has determined that, absent a statute to the contrary, punitive damages cannot be awarded against a government entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748 (1981). However, this preclusion of a punitive damages remedy does not apply to the individual defendants to the extent they are sued in their personal capacities. *Smith v. Wade*, 461 U.S. 30, 35-36, 103 S.Ct. 1625 (1983). In *Smith*, the Court held that punitive damages may be recovered from individual defendants in certain §1983 cases. In our case, the Court found that Plaintiffs could not obtain punitive damages against Defendants Graziano, Seitzinger and Mitchell in their official capacities. Thus, the Court allowed Plaintiffs to proceed with respect to their claim for punitive damages as against Defendants Graziano, Seitzinger and Mitchell in their individual capacities.

does not show that their Ferdinand Street garage was in such disrepair to be a danger to the safety of the public. Plaintiffs also point out that Defendant city's own engineer (Swanson) only recommended that their Ferdinand Street house be demolished and only sent out a notice regarding their house. (Doc. 35, p. 9).

As both parties recognize, punitive damages may be awarded against public officials in their individual capacities in a § 1983 case when defendants have acted with "reckless or callous disregard of, or indifference to, the rights and safety of others." *Keenan v. Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992)). Indeed, the law well-stated law that Plaintiffs may sue Defendants Seitzinger and Mitchell in their individual capacities for punitive damages with respect to a claim under §1983. *See Agresta v. Goode,* 797 F. Supp. 399, 410 (E.D. Pa. 1992).

The Third Circuit has also stated that:

> punitive damages in general represent a limited remedy, to be reserved for special circumstances. Despite its utility as a deterrent, the punitive damage remedy must be reserved, we think for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief.

*Keenan v. Philadephia*, 983 F.2d 459, 470 (3[d] Cir. 1992) (citing *Cochetti v. Desmond*, 572 F.2d 102, 105-106 (3d Cir. 1978)).

The *Cochetti* Court set out requirements for the defendant's conduct to justify punitive damages, namely, "that the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." *Cochetti*, 572 F.2d at 106.

As discussed in great detail above, the Court finds that Plaintiffs will be permitted to

proceed to trial on their Fourteenth Amendment procedural due process claim against Defendants Seitzinger and Mitchell with respect to the demolition of their Ferdinand Street garage since the evidence is disputed as to whether the garage was damaged by the July 2009 fire and whether the garage presented any threat to the safety of the public. The evidence is also disputed as to whether Swanson only recommended that Plaintiffs' Ferdinand Street house be demolished and whether any notice was sent to Plaintiffs regarding the demolition of their garage. Based on the disputed facts, the Court agrees with Plaintiffs that their claim for punitive damages against Defendants Seitzinger and Mitchell in their individual capacities should proceed to trial.

Thus, the Court will deny Defendants' Summary Judgment Motion insofar as it asserts that Plaintiffs' claim for punitive damages should be dismissed.

## V.  CONCLUSION.

Based on the foregoing, the Court will grant Defendants' Motion for Summary Judgment (Doc. 30) with respect to all claims against Defendant City of Scranton and, it will enter Judgment in favor of Defendant City and against Plaintiffs. The Court finds that Defendants Seitzinger and Mitchell are entitled to qualified immunity with respect to Plaintiffs' Fourteenth Amendment procedural due process claim relating to their Ferdinand Street house, and it will grant Defendants' Motion for Summary Judgment regarding this claim. However, the Court will deny Defendants' Motion for Summary Judgment with respect to Plaintiffs' Fourteenth Amendment procedural due process claim against Defendants Seitzinger and Mitchell regarding their Ferdinand Street garage.

Further, Defendants' Summary Judgment Motion will be granted with respect to Plaintiffs' Fifth Amendment Takings Clause claim. The Court will deny Defendants' Motion for Summary Judgment in regards to the Plaintiffs' claim for punitive damages against Defendants Seitzinger and Mitchell in their individual capacities.

An appropriate Order and Judgment will issue.[8]

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: September 30, 2013**

---

[8]By separate Order, the Court will schedule a pre-trial conference with respect to Plaintiffs' remaining procedural due process claim under the Fourteenth Amendment against Defendants Seitzinger and Mitchell.